Members of the panel, may it please the Court, my name is Richard Baum and I am representing the appellant, the Kroger Company, in this appeal. The Oregon Legislature in ORS 653.295, which is addendum 1 to our opening brief, the non-competition agreement statute, and that bonus restriction agreements are lawful agreements that may be enforced by the courts in this state, and that bonus restriction agreements are not subject to the normal limitations of non-competition agreements, that is, that they be entered into upon initial employment or bona fide advancement. And bonus restriction agreements were defined by the legislature as an agreement which limits or restrains competition after termination of employment, and where the penalty imposed on the employee for competition is limited to forfeiture of profit sharing or other bonus compensation that has not yet been paid to the employee. So it's very important to note that what we are talking about today is a case not in which the employee is exempt from competing, but simply where the employee is given a choice. They can comply with their employment agreement and not compete after they leave and accept their severance package, or they can choose to take a job and compete against their former employee and forfeit their severance package and accept the compensation from their new employee. A choice which Judge Posner in the Sarnoff called a choice between a cushion and a soft place as compared to a rock and a hard place. And it's very important to understand that that's what we're talking about because none of the concerns that the legislature had in drafting the non-competition agreement statute apply in this case. We do not have a situation in which there are oppressive tactics by an employee that goes to an existing employee and says, sign this non-competition agreement for no new consideration if you want to keep your job. That's the concern of the non-competition statute. Does that really matter, counsel? Don't we have to look to whether or not the agreement falls within the parameters set forth in the statute, whether or not the concerns are there or not? Well, absolutely. You have to look to the language of the statute, the bonus restriction agreement language. So could you address whether or not the language in the bonus restriction provisions complies with the exceptions set forth in the statute? Yes, ma'am. The bonus restriction agreement, as I said, talks about the penalty imposed on the employee for competing being limited to forfeiting, profit sharing, or other bonus compensation. And in our case, Mr. Miller's employment agreement with the Kroger Company specifically provides that if he competes with Kroger, he forfeits receipt of his severance package. The severance package, which appears in the excerpts of record at page 123, is calculated as three years, 36 months, of future salary, 1.6 times his base pay. The 1 times Kroger base was his base. His salary bonus was 60% of his base salary. So you get his severance by taking 1.6 times his base and three years for futures. In other words, he was agreeing not to compete for three years. That severance package, which also included a few other items, his imputed retirement benefits, three future years of those things. The point is, all of his severance package was bonus compensation. And under the plain, ordinary meaning of the statute, which is what Oregon's Supreme Court has said in the PGE case, you start with, in terms of statutory interpretation, you start with the context and the plain, natural, and ordinary meaning of statutory language. And it's our position that it's fairly clear that a severance package, where this is above and beyond what the gentleman was making as the CEO of the company, this is now additional three years of compensation he's being given as severance. That by definition, a severance package is bonus compensation. And we have cited in our brief to many cases, which in fact use the term severance bonus and severance compensation. It was bonus compensation that has not yet been paid to the employee, right? Exactly. But didn't the contract provision say that if Mr. Miller violated this contract, any amounts paid would have to be returned? Yes, but he had not been paid anything. But the fact that that provision was in there, doesn't that manifest a contemplation that it would be for compensation that had been paid? No, ma'am, because if you look at paragraph 4.3 of his contract, at ER 126, it says executives' receipt and retention of the severance is conditioned on his not competing. So when he left to compete, he was not entitled to receive his severance at all. I mean, you're looking at what actually happened, but I'm talking about what this contract envisioned. This contract envisioned a return of any money paid if he competed, which appears to be inconsistent with the law. I don't believe that's true, Your Honor. First of all, the statute says he's not entitled to receipt of the severance compensation if he goes and competes. The statute doesn't say that. That's what the agreement says. That's what the agreement says. He's not even entitled to it, so therefore it is money not yet paid. What if Mr. Miller had gone into, had been paid money, and subsequently, Kroger determined he was competing? Wouldn't the contract allow Kroger then to ask him to repay that money? Yes. And so isn't that contemplation in violation of the statutory provisions? No, Your Honor. Why not? Because the language of the statute, it says the penalty imposed is limited to forfeiture of profit sharing or other bonus compensation that has not yet been paid to the employee. That means not yet paid as of the time the employee leaves the employment of the company. What are you relying upon to support your interpretation of that language? There are absolutely no cases, Your Honor, interpreting this language at all, and I will point out that that is one of the reasons that we made our motion to certify this case to the Oregon Supreme Court, because if the court were to find that this language is not clear on its face, then it's really for the Oregon Supreme Court to say what the legislature intended. I think that has not yet been paid, common usage of that would be pretty clear. Not yet been paid as of the time that the person left, because that's what we're talking about here. But I think if the legislature had meant as of a certain time, it could have easily put that in there. Well, to limit it in the way that you're describing would make no sense in the context of an employment agreement with compensation after termination, because this whole bonus restriction agreement only comes up when competition is restrained after termination of employment. So it wouldn't really make any sense if, on the one hand, it would be a valid agreement if they hadn't paid it yet, but then if they paid it and then got it back, it wouldn't apply. The whole point here is that rather than saying you cannot compete after you leave, the employee is being given a choice, and because they're being given a choice, it's not like a typical non-competition. Under the statute, it makes sense. Under the agreement, the agreement fitting within the statute doesn't make sense because the agreement goes further than the statute contemplates, in my view. Well, I don't think that that's the case, but obviously it sounds like you disagree. I mean, the way the statute works, it's addressing the situation in which after termination of employment, the person is being given a choice. They can either abide by the agreement and forfeit and receive their severance compensation, or they can make the choice to go out and compete and forfeit what has not been paid to them at the time that they were terminated, which is the severance. It's all future unearned compensation. And how much competition is there between Kroger's and Rite Aid? Well, that, Your Honor, of course, is the issue that was that we were intending to take to trial. Well, tell me, tell me. Well, it's quite substantial. What your evidence would have been? Our evidence would have been. Give me the relative amount of competition. Our evidence would have been that everything sold in a Rite Aid store can be found, everything, 100 percent can be found in a Kroger or a Fred Meyer store and about 35 percent of what you would find in a Kroger or a Fred Meyer store. How much, how much, how much, how much, what's the percentage of competition to Kroger's? Is that not true? Oh, I'm not sure that's that's not really the test, because under the statute. I understand, but I'm curious to know how much, I mean, if one store has four pairs of pants by X company, that's competition to the another company that's got 45 pairs of pants by X company. Well, what I was trying to say, Your Honor, is 100 percent of the products in a Rite Aid store would be found in a Kroger or a Fred Meyer. Yeah. And going the other way, it's about 35 percent. And how much of how much does that constitute a Kroger's business? The competing, the competition is how much? Thirty five percent, thirty five percent overlap. Thirty five percent? Yes, Your Honor. Counsel, you talked about certification. Did you raise that issue in the district court? We did not, Your Honor. You waited until after you lost? Well, I wouldn't put it quite that way. You got here to to now discover that perhaps the law is unclear and should be certified? I wouldn't put it quite that way. But tell me what happened. What happened, quite frankly, is that at the district court level, we were getting ready for trials. Two summary judgment motions were filed, as the record indicates, this one and another motion. The arguments were briefed and it did not, frankly, even occur to us at that time that perhaps the Oregon Supreme Court would be best off determining the issue. It was something we thought about it as we were preparing these briefs and we pointed out in our letter brief opposing opposing their request that often the issue of certification comes up sui sponte by the panel and that there don't appear to be cases other than the Dicta and McLinn that would say that it's a big problem. When you received the complaint in this case, didn't you realize there were problems about interpretation of an Oregon statute that no court had yet interpreted? It was not until the motion was filed for summary judgment that the issue of whether or not the statute, the contract was enforceable or not even came up. So it was really a time you could have asked for certification. Yes, we could have. The legislative history, which we've cited to extensively, makes clear, finally on this bonus restriction point, makes clear that the legislature realized it had gone too far in only allowing non-competition agreements upon initial employment. And in response to a court of appeals case, the Les Schwab case, they specifically talked about a situation in which the employee is given the choice, as I mentioned earlier, the choice to either not compete and take the compensation or compete and turn down the compensation. Counsel, in your view, what is the provision of the employment agreement in this case that complies with the bonus compensation language of the statute? What bonus compensation is referenced in the agreement? The severance package, Your Honor, which Mr. Miller was entitled to if he left progress employment, is that ER 123, it's paragraph 4.1A, and then there are four paragraphs, A, B, C, D, actually five paragraphs, A, B, C, D, and E of 4.1. Right. And so you're saying that none of this compensation would have been paid to the employee? That's that set forth in paragraph four. None of this would have already been paid to the employee. That's true. It would. None of this would have been irretrievably due to the employee. No, this is all his severance package, which he gets when he leaves. Right. But was it was. Is there anything included in here that the employee would have entitlement to, regardless of whether or not he competed with the company? There are only in, I believe it's 4.1D, sub D on ER 125, there are some accrued but unpaid salary and accrued but unpaid vacation pay, which he was paid separately when he left. So that would be payable to him regardless of whether he competed or not with the employees. Amounts in the severance section negate compliance with the bonus compensation language? I don't believe so, Your Honor. Those were amounts that the accrued amounts are amounts that he had been paid anyway because the Oregon statute's other statute requires the payment of those accrued items. So I don't think that just because those items are included in the severance package that that means that the severance package is not bonus compensation. I want to turn also to the initial employment issue because and I don't have that much time left, so I'm going to be brief. But it's important to note that although Mr. Miller initially was given his severance package by Fred Meyer just prior to the employment agreement with Kroger after he had been working for a number of months with the Kroger company, the non-competition agreement and the severance were the same. And as our brief indicated, that entire transaction was in connection with his initial employment with Kroger. So I think the other side takes a very technical or hyper technical view that he'd already been at Kroger several months when he signed the Kroger agreement. But of course, Kroger, as part of the merger, had accepted and assumed the employment agreement that Fred Meyer had given to Mr. Miller just prior to the Kroger agreement. And that bonus compensation that he got, the new severance package, was a part and parcel of the merger and was in anticipation of the merger with Kroger. Finally, under the statute, a subsequent bona fide advancement is also sufficient. And in this situation, if the court were to conclude that it wasn't initial employment because he had already been working at Kroger, then his move from the CEO of Fred Meyer to the vice chairman of the board and COO of the Kroger company, which is a three times larger company after the merger, would be considered a subsequent bona fide advancement. And on that point, the court disagreed. But I think, as we indicate in our reply brief, it's at minimum an issue of fact that's not appropriate for summary judgment as to whether or not working at this larger company in the number two position is an advancement over the number one position. So that proposition, you're relying on the Fred Meyer agreement, the 1998 agreement? What proposition, your honor? That there was an advancement. Well, the advancement comes when he goes from being the CEO of Fred Meyer to the COO and vice chairman of the board of Kroger. There was no Kroger agreement. There was no Kroger agreement when he first was given the severance package, but he was and it was made a condition of the merger that Kroger accept the Fred Meyer agreement. So you're relying on the Fred Meyer agreement? It's really the two agreements together that lead to the change in jobs. The Kroger agreement didn't occur until many months later. No, but he became. There was no advancement under the Kroger agreement, was there? No, he'd already, the advancement occurred while the Fred Meyer agreement was still in effect. Yes. Half the Kroger had assumed it.  That's my question. I'll reserve my remaining time. Thank you, counsel. Good morning, Your Honors. May it please the court. Under first dealing with the bonus restriction agreement under bonus restriction under Oregon law, PG&E and Veneta, the best evidence of legislative intent is obviously the words used in the text by the legislature. Taking the words used here, we find that Kroger's analysis ignores several of the words and leads them in their reply brief on certification to say that unlike they're saying now, the language is not clear and there's substantial ambiguity. So they argued to this court in certification that they had no clear definition. And the reason for that is in their reply brief on page six and seven on the merits, they argue that the following is not a bonus, according to Kroger, the compensation awarded to the employee during the regular course of employment, which would include salary, retirement benefits, and this is an exact quote, yes, performance based bonuses. Their interpretation to this court was literally that a bonus is not a bonus. That the word bonus in the statute does not mean a bonus because they say that Mr. Miller's bonus is not a bonus under the statute. That is not a reasonable interpretation. Indeed, I would argue it's an absurd interpretation. And I would argue that as the district court, as Judge Hargitay found, there was really no doubt about whether a severance is a bonus or not. You can say that Rite Aid was in competition with Kroger? Your Honor, it's interesting. The statute, the contract. My question, my question is do you concede or you don't concede? No, we don't because of the following. The contract defines competition as being in the same business. It says specifically for purposes of this, competition means the same business. Rite Aid is in the drugstore business and Kroger is in the supermarket business. Well, no, they purchased, Fred Meyer purchased that drug company, which is now a part of Kroger. I'm not aware of the drug company they purchased. I think it was another supermarket chain that purchased the drug company. The additional, Your Honor, well, this is not before the court because there is testimony that Mr. Miller was specifically told before he signed the contract that this only applied to supermarkets. So when he went to Rite Aid, he thought he was in no way violating. But that evidence is not before the court. No, because that issue is not before the court. That was the second summary judgment motion, Your Honor, that Judge Hargitay determined was moved because he granted the first. The issue that's not before us is whether there was a, they were in competition. Right, Your Honor. The issue before you is that the non-competition agreement is illegal under Oregon law, and it's illegal because it was not at the initial employment, it was not at the initial employment either with Fred Meyer, he'd worked there seven years, or with Kroger, he had worked there four months. And with the Kroger agreement specifically, the 99 agreement, saying it's not effective until two months afterwards. You couldn't have clearer evidence of that. And even if you take it as a continuum, which they want to take it as sometimes in their arguments, that is Fred Meyer and Kroger are one, that doesn't help because he was there seven years before they entered into it. And there was no subsequent advancement at all with the company. Because when he entered into the 98 agreement, his position was the same before or after. When he entered into the 99 agreement, he was the same before or after. It just simply is a very direct thing. Judge Hargitay's opinion goes through it very systematically about each of the arguments on this. Their main argument here, which was not their main argument below, was in the bonus restriction agreement. And they get tied up in a quagmire of trying to interpret the term bonus to fit into severance. Severance is never mentioned in the statute. The statute talks about profit sharing or other bonus compensation. The word other under the Veneta Supreme Court case in 1997 following PG&E, Oregon Supreme Court, the word other is a very significant word in Veneta and in court of When you have the word other in that situation, the words that follow are limited and are of the same kind as the word before. And a broad and expansive interpretation of the words after other are impermissible under Oregon law. And on page six, Kroger of their reply brief on appeal, Kroger admits that what they're seeking is a very broad interpretation. They use the word broad as seeking a very broad interpretation. It's an interpretation that would have, as the district court found, almost any agreement to be a bonus restriction agreement. If the Oregon legislature wanted that, it would have been very simple to say compensation or benefits. But they limited it because they were dealing with a less Schwab situation, which is a profit sharing agreement. And as the words used in the text and as the legislative history conforms to it, they're talking about what somebody is a part owner. That's what the legislative history says. Will you get a benefit? The definition of bonus compensation that we have put forth in the very well respected HR text on compensation, employee compensation, says that a bonus is really based upon performance. That is the performance of the individual, the performance of the company or some unit in it. If it meant severance, they would have said severance. And in the legislature, there was only one person who testified. That was David Wilder Ford. If they meant severance, you could be sure that the AARP and other organizations would have been in there because people would have lost significant severance benefits that are their rights. It would have been a very much expanded thing, affecting a whole host of workers in our state who move from one job to another job frequently in the same business. I don't think Mr. Miller did, but frequently people move because that's what you do. You move often to where you're going and to have had that expansion without stating it is just it's also a suggestion that the competition between Rite Aid and Kroger comes from Fred Meyer's acquisition of Smith's Food and Drug Centers. They did acquire Smith's Food and Drug. All right. So I do have drugstores in some of the You didn't remember that when I asked you the question. Well, I thought you meant a standalone drug company and there was a standalone drug company, Long's, and others that were bought by other companies. How big was Smith's Food and Drug Company? I don't remember. It was one of the smaller chains that they bought, but, you know, it was A nationwide chain? No, a relatively compact area. In the West, a relatively compact area. Well, isn't there a sense of ethics in CEOs? I guess there isn't anymore when you read the news. No, Your Honor, Mr. Miller was told to deliberately go and join a company that's in direct competition. No, Mr. Miller was told before he left, before he signed this agreement, and there's a testimony by the person who told him that this applies to other supermarkets. Why do you think society today is having so much problem with CEOs? Well, that's a very good question, Your Honor. That would probably take me more than the 20 minutes allotted. But I think it's important that executives and people be allowed to move between companies. And I think a restraint on that doesn't do our society very good and doesn't do employees very good who want to work. And that's why the ICON case, which was affirmed by this panel, talked about the importance that Oregon doesn't like non-competition agreements. Well, maybe we ought to certify this to the Oregon court because they may take a stance against CEOs that the rest of the public is taking these days and say that that law applies to CEOs, not just lower level employees. I understand Your Honor's point. This is, though, a statute of general interpretation and applies to executives as well as other workers and a factor that, if it was applied differently, would have a broad impact on our society that I don't think would be useful. Mr. Gordon, I want you to walk me through something, because I understand that there was a merger to protect Mr. Miller in the event of a merger and the merger occurred five days later or so. Is that true? It was. There was the merger was signed five days later. It wasn't effective for six months. In the 1998 Fred Meyer agreement, there was a non-competition clause. Is that true? Yes. Kroger assumed the 1998 Fred Meyer agreement. Is that true? That's correct. Why then is that at his initial employment with Kroger, there was a non-competition agreement? Because of a couple of things. One, the agreement was illegal when made. That's a that's a different question. And therefore, assuming it under Bergen law, as the district court found, you cannot make an illegal agreement legal by assuming it. Secondly, under the statute, does that then require us to determine the legality of the Fred Meyer agreement? Well, the Fred Meyer agreement was entered, was not entered into upon its initial appointment or any such. I'll talk about the 98. The one that was drafted. Right. No, I understand. No, I understand. That agreement was illegal. And the court, the district court did determine that also in response to Kroger's argument that the 98 agreement was the agreement to look to. The court said the 99 is. But if you look at the 98 agreement, it doesn't save him because it was illegal. But the statute, Your Honor, in in. Find the six. The the employee and employer have meaning provided for those terms in O.R.S. 652.310. 652.310 says that the employer includes any successor. Therefore, the agreement was entered into upon the initial employment of Miller, not on the initial employment with Miller and successors like Kroger. So that was when it was entered into. It was not entered into upon his first employment with Kroger. And it has to be entered into upon them. And there's testimony in the record clearly that. What about the fact that they assumed, though, that Fred Meyer. But if it's illegal, as I said, or the law, which we both side in the district court cited, is that let's suppose we disagree. OK, well, then the next the next thing is that the ninety nine agreement on the Pacific Veterinary was an illegal modification. And for a fact, 16 undisputed facts, 16 in the record. Kroger admits that it was a modification that expanded geographically and also boards of directors. That's one of that's one of the things about the the case, Your Honor. It was it was it was so there's so clear on so many levels that that their argument failed on that basis. So how should we certify it? Well, first, they have a substantial burden to meet when they have not been only not raise it below, but they didn't raise it in their briefs. That's discretionary with us. It's absolutely overworked and we can certify it's absolutely discretionary with you. And Your Honor, if I may, on certification, first of all, there well, there is no case that specifically applies the facts to the law of this case. There are very clear places under Oregon law on bona fide on how to interpret statute, both the NEDA and PG&E. And so it's a very direct stage on the other two bona fide subsequent advancement and initial employment. There is a number of cases in Oregon that can easily be. We follow the Oregon three step analysis. The Oregon Supreme Court say and say they were wrong. In almost any case that Your Honor has, that is always possible. Sure. If there's a justice court in Oregon, the justice court can say we're wrong. The one of the things that would lead to, I fear, is a certification of almost every issue. And one of the determinations of certification, both in Oregon and in this court, is whether it's broad public importance. And that's one of the factors that courts take into account in certification. Judge Ferguson has mentioned one great public concern, and that's the way CEOs are operating and getting bonuses and affecting the future. I don't think the Oregon Supreme Court would consider that in relation to the issues before this court. There is no indication at all in the statute, which is a general application, or the legislative history that that would be applicable. And what the certification, one of the key issues always is, is both under the standards of the U.S. Supreme Court and the Oregon Supreme Court, is not a fact based certification issue. And the way they've worded them are obviously very fact based. They misstate the facts. We went into this in our opposition to certification. They have partial facts. They're not determinative of the issues. All of those standards, they fail on. But the one thing I don't believe that the Oregon Supreme Court, among others, would deal with is that broad public policy issue, which has not been implicated in this case at all. And I've hesitated to respond because Mr. Miller was a great leader of this state, gave huge amounts of money to charity through Fred Meyer, required that Kroger give large amounts of money to charity as part of the merger, which they haven't done, and which is a whole other issue. And he has operated in an ethical and very important way in building Portland and Oregon and is well known for that in this state. And there should be nothing taken away from him. He's an example. He went into Rite Aid after they had all the problems in Rite Aid and cleaned it up and has gotten universally good reviews as the type of CEO who will clean up problems and run a clean ship. So I understand the many problems with CEOs in the country. And this is well beyond the record. But Mr. Miller is a very good corporate citizen and has done that. The Fred Meyer Foundation, which he and Ron Burkle set up, has given significant amounts of money to help people and they've attempted to do that. And I apologize for going well beyond the record on that, but I don't think there would be a dispute about that by anybody. Thank you. Thank you, counsel. Rebuttal. The longer I sit on this bench, the more I wonder why my counsel filed cases in federal court when it strictly involves a state court issue. Well, your honor, that's an interesting point on the certification, because unlike the McClain case, which was why did you file in federal court? We did not, your honor. We were the defendants. Why did you file in federal court? We were the defendants, your honor. We were hauled into federal court. Was that? We were the defendant. Kroger was the defendant. We were sued in federal court by Mr. Miller. And that's one of the reasons why the certification to the Oregon Supreme Court makes sense, because there is absolutely no case describing the language forfeiture of profit sharing or other bonus compensation. And it's for the Oregon Supreme Court to decide what did the legislature mean. And I contend that what the legislature was trying to do is create a balance where maybe a non-competition that prohibits competition is bad, but where this man is being given the choice between take our $6 million and don't compete with us or take their $10 million and do compete with us, he shouldn't get it both. And that's something the Oregon legislature said, and I think the Supreme Court would have an interest in interpreting that statute. One final point I'd like to make, under the initial employment, as Judge Alarcon was talking about, we have cited a case called Olston Corporation versus Summers, the federal district court here in Oregon, in which the court enforced a non-competition covenant signed two weeks before initial employment. And the situation that we really have here is Mr. Miller signing the non-competition five days before the merger agreement between Fred Meyer and Kroger are signed. So there really is a unitary situation here in which the Fred Meyer board gave Mr. Miller this big new severance package and the non-compete in connection with his initial employment with Kroger, which was contemplated to happen immediately thereafter. Thank you, counsel. The case just argued is being submitted. We will be in recess for five minutes.
judges: Alarcon, Ferguson, Rawlinson